(No. 2872—

E. HUWALD, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 10, 1942.*

PAUL D. PERONA, for claimant.

GEORGE F. BARRETT, Attorney General; ROBERT V. OSTROM, Assistant Attorney General, for respondent.

FISHER, J.

In the complaint which was filed on March 30, 1936, claimant alleges that he was a duly qualified civil service employee of respondent; that he was laid off, or discharged, on March 9, 1934; that he did not receive a discharge or lay-off notice in accordance with the statute of the State of Illinois as in such case made and provided; that after complaint was filed with the Illinois Civil Service Commission, he was sustained. That, thereafter on May 16, 1934, he received a formal discharge and lay-off notice signed by A. L. Bowen, Director of Public Welfare, a copy of which was filed with the State Civil Service Commission on May 18, 1934. That he, thereafter, filed objections with respect to his discharge with the Illinois Civil Service Commission, which Commission heard the evidence, and claimant received an order on August 4, 1934, which found that "no sufficient evidence was submitted to the Commission to indicate in any way the action of the Department of Public Welfare in laying off petitioner from the position of senior department clerk was taken for political, racial or religious causes."

The record consists of the complaint, amended complaint, transcript of the evidence, brief and argument filed on behalf of claimant and respondent, and respondent's motion to dismiss.

Claimant seeks an award of Seven Hundred Thirty-five Dollars ($735.00) for salary at the rate of Thirty-five Dollars ($35.00) per week for the period March 9, 1934, to and including August 4, 1934.

For the purpose of this opinion, this court will divide the claim into two parts, namely, from March 9, 1934, to and in-

cluding May 16, 1934, and from May 18, 1934, to and including August 4, 1934.

With respect to the latter period, it is the opinion of this court that unless a discharge of an employee is set aside by the Civil Service Commission it "stands," not from the date of the final hearing but from the date it is made and served upon the employee. In such event, the final outcome is exactly the same as though no complaint had been filed with the Commission. The discharge was effective when made. Any other conclusion would lead to absurd results. In the instant case the claim is for salary for twenty-one (21) weeks, the time from the discharge to the time of the final action by the Commission. Instead of twenty-one (21) weeks, the time the final order of the Commission was entered might have been delayed for many months instead of weeks. To grant a discharged employee, during such period, a salary, would be against public policy and would encourage every discharged employee, no matter for what cause he might have been discharged, to file a complaint that his discharge was for a political, racial or religious cause, and then cause delay and postpone final action by the Commission as long as possible, knowing that the longer the matter could be delayed, the more money he would receive for which no service was rendered. Pending the hearing before the Commission the claimant was not on any payroll and was not performing any service for the State. To pay him a salary during such time would not only be against public policy but would be in direct conflict with Sections 20 and 30 of the Civil Service Law.

With respect to the period from March 9, 1934, to May 16, 1934, inclusive—inasmuch as he had tendered his services to the State, and was not discharged in conformity with the law, and the Illinois Civil Service Commission so held, there is merit to claimant's demand for salary during this period. The evidence shows that he tendered his services but was prevented from discharging his duties by respondent; that he was a duly qualified civil service employee of the State of Illinois; that he was illegally discharged; that he was not otherwise employed during the period for which he seeks payment, and that he was diligent in the protection of his own rights. The evidence, however, does not make entirely clear whether his salary was, or was not, paid to a de facto officer. At the hearing of this case the claimant was asked—

Q. Do you know if any one else was occupying the position of Senior Department Clerk at the State Penitentiary at Joliet, during that period of time?

A. Well, I do, but I have no way of proving it. In my judgment and belief there was  On March 14, when I got back, the plumbing inspector, one Walter Krowalski told me that Mr. Kine, the Superintendent, told him to stay in the stock room and take inventory; that the turn-over  of the stock to the Chief Engineer of the Institution  was only verbal, and probably done so, just to balance the account.

It would appear that Walter Krowalski was already in the employ of respondent as a plumbing inspector and it would be a fair inference from the answer given that he was temporarily performing some of claimant's duties in addition to the duties for which he was employed. We cannot conclude from this evidence, however, that he was being paid for performing claimant's work as a de facto officer. The burden of proving this fact is on respondent. From the record before us, this, respondent has failed to do, and the inference from the record is to the contrary. It is, therefore, the opinion of this court that claimant is entitled to recover his salary from March 9, 1934 to May 16, 1934, a period of 9½ weeks at $35.00 per week, or a total sum of $332.50.

Respondent's motion to dismiss is hereby overruled and an award is hereby entered in favor of claimant for the sum of $332.50.